# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PUBLIC BROADCASTING SERVICE, *et al.*,

   *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

   *Defendants*.

Civil Case No. 1:25-cv-01722-RDM

---

## BRIEF OF AMICUS CURIAE AMERICA'S PUBLIC TELEVISION STATIONS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Natalie Fleming Nolen (D.C. Bar No. 1024018)
MORRISON & FOERSTER LLP
2100 L St NW
Washington, DC 20037
(202) 887-1500
nflemingnolen@mofo.com

*Counsel for America's Public Television Stations*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Local Civil Rule 26.1, the undersigned counsel of record for Amicus Curiae America's Public Television Stations certifies that, to the best of my knowledge and belief, America's Public Television Stations is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

Dated:  June 20, 2025                                         Respectfully submitted,

/s/ *Natalie Fleming Nolen*
Natalie Fleming Nolen (D.C. Bar No. 1024018)
MORRISON & FOERSTER LLP
2100 L St NW
Washington, DC 20037
(202) 887-1500
nflemingnolen@mofo.com

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................................. i

TABLE OF CONTENTS ............................................................................................................... ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

INTERESTS OF AMICUS CURIAE ..............................................................................................2

ARGUMENT ...................................................................................................................................5

I.   Prohibiting direct federal funding to PBS—and prohibiting local stations from accessing PBS programming and services with federal funds—would harm local stations and communities. ...........................................................................................5

II.  Many stations are at risk of shutting down completely, struggling to acquire alternative programming, or limiting the production of local programming if forced to use non-federal funds to access PBS programs and services. ..........................................9

CONCLUSION ..............................................................................................................................12

CERTIFICATE OF COMPLIANCE .............................................................................................13

CERTIFICATE OF SERVICE ......................................................................................................14

## TABLE OF AUTHORITIES

**Statutes**

Public Broadcasting Act, 47 U.S.C. § 396……………………………………………………1

**Other Authorities**

Exec. Order No. 14,290, *Ending Taxpayer Subsidization of Biased Media*, 90 Fed. Reg. 19,415 (May 1, 2025)…………………………………………………………………………..*passim*

**INTRODUCTION**

Public television stations serve everyone, everywhere, every day for free, including in places where there are no local commercial television stations. America's public television stations are committed to three essential public service missions: education, public safety, and community connections. They provide early childhood education, classroom services and teacher professional development resources, high school equivalency preparation, workforce training, and adult enrichment. Local stations keep the public safe in times of emergency by sharing critical local information to prepare for and respond to emergencies, including by broadcasting emergency alerts; providing a reliable backup communications pathway for the Wireless Emergency Alert system, which sends life-saving geo-targeted alerts to cell phones; and connecting public safety, law enforcement, and first responder organizations through datacasting over public television broadcast spectrum. Local station programming further helps viewers understand the issues they face locally and regionally and keeps communities safe when emergencies arise.

When Congress established the nation's public broadcasting system, it made clear that "it is in the public interest to encourage the growth and development of public radio and television broadcasting, including the use of such media for instructional, educational, and cultural purposes." 47 U.S.C. § 396(a)(1). Congress provided long-term appropriations to the Corporation for Public Broadcasting (CPB) to ensure that public television would be able to sustainably provide viewers with "programs of high quality, diversity, creativity, excellence, and innovation." 47 U.S.C. § 396(g)(1)(A) & (k).

Executive Order 14,290 (hereinafter, "E.O. 14,290"), issued on May 1, 2025, threatens that mission. E.O. 14,290 directs CPB and the heads of federal agencies to cease direct and indirect funding to National Public Radio (NPR) and the Public Broadcasting Service (PBS). If E.O. 14,290 is upheld, it will irreversibly harm public television as we know it and undermine public

1

safety, civic engagement, and educational opportunities for the nearly 97 percent of Americans who have access to local public television via a broadcast signal. Rural communities without local public television stations will unquestionably suffer—they will be cut off from vital programming and will lose access to critical public safety information, including early warnings during natural disasters. APTS agrees that E.O. 14,290 is unlawful. It files this amicus brief to drive home, in concrete terms, precisely how E.O. 14,290 is irreconcilable with Congress' will and First Amendment protections. For all these reasons, the Court should grant PBS' Motion for Summary Judgment.

## INTERESTS OF AMICUS CURIAE

America's Public Television Stations (APTS) is a nonprofit 501(c)(3) membership organization dedicated to ensuring a strong and financially sound public television system and helping member stations provide essential public services to the American people related to public safety, education, and local community connections. APTS has 127 members, which operate approximately 310 public television stations across the country. APTS does not regularly submit amicus briefs or participate in litigation but does so now in service of our member stations, who rely on federal funding to serve their communities. APTS members receive federal funding to serve their local communities, including by bringing nationally recognized PBS programming to their local service areas, producing critical and beloved local programs, and providing a range of educational and public safety services and resources to meet the needs of their communities.[1]

APTS members include most of the public television stations across the country. Public television stations provide free, over-the-air service to nearly 97 percent of the population of the United States, from the largest metro areas to small rural communities, and everything in between.

---

[1] Appropriations to public broadcasting amount to about $1.60 per person per year.

Public television stations are locally governed and locally operated, including by public agencies, state governmental entities, educational institutions, and local nonprofit organizations.[2] Member stations are located in every part of the country, including in areas where the stations and their communities often have limited resources. Many of these communities lack access to consistent cell service or Wi-Fi connectivity and may not be served by any other television broadcaster.

A non-exhaustive list of APTS member stations and the communities that they each serve is provided below:

- Alaska Public Media, which offers both public radio and television, provides public television service via KAKM-TV in Anchorage, as well as a shared television service with KTOO in Juneau and KYUK in Bethel, Alaska.
- Broadcasting from Fairbanks, Alaska, KUAC TV's signal, together with its three TV translators, reaches nearly from the Canadian border to the Bering Sea and is, in many cases, the only television signal Alaskans in rural, Native, and bush communities receive.
- Northern California Public Media—KRCB TV and KPJK TV—serves rural audiences in northern California, as well as highly urbanized populations in the Bay Area including Oakland and San Jose.
- WQPT PBS in Moline, Illinois serves 800,000 people in western Illinois and eastern Iowa.
- PBS Fort Wayne reaches 800,000 people across the city of Fort Wayne, Indiana, and a largely rural area spanning across eleven counties in northeast Indiana and three counties in northwest Ohio.

---

[2] The local non-profit organizations are known as "community licensees" because each is required to maintain a local community advisory board.

3

- Kentucky Educational Television (KET) is the only statewide broadcast network in the predominantly rural state of Kentucky, attracting more than two million viewers each week, including Kentuckians of all ages and backgrounds, many of whom live in remote and/or disadvantaged areas.

- Maine Public has a weekly audience of 1.23 million across its radio, television, and digital platforms, including five television stations across the state.

- In Missouri, Nine PBS serves 2.8 million people across 31 counties in the St. Louis region, 26 of which are overwhelmingly rural. The station's viewers are evenly split: one-third identify as Republican, one-third as Democrat, and one-third as Independent.

- Montana PBS offers five broadcast channels with over 250,000 weekly viewers, across university towns, former mining cities, seven Indian reservations, industrial and economic metro centers, and small rural farm communities.

- New Mexico PBS broadcasts in northern and central New Mexico, reaching over a dozen rural New Mexico communities that are served by no other television broadcaster. The station serves a diverse array of viewers, including remote Native American communities, who rely on the station for life-saving emergency alerts, news, and public information. New Mexico PBS also has a unique arrangement with the Navajo Nation that allows them to carry PBS programming on their own proprietary broadcast system, thereby reaching the largest Native American tribal lands in the United States.

- WCTE PBS, located in Cookeville, Tennessee, is a small, rural media organization serving 1.3 million viewers in a 14-county region in central Tennessee, known as the Upper Cumberland. It is the only broadcast television station in a 75-mile radius of Cookeville.

- KEDT serves 2.2 million people in the Corpus Christi, Texas region—the area with the highest poverty rate in Texas—and is the smallest community-owned public television and radio service in the country.

- Vermont Public serves 1.14 million, mostly rural, residents through television and radio across Vermont, as well as in New Hampshire, Massachusetts, and New York.

- WHRO serves a diverse cross-section of communities in eastern Virginia, including large military populations (active-duty service members, military families, and veterans), across Norfolk, Virginia Beach, Hampton, and Newport News, and rural and agricultural communities in areas like the Eastern Shore. Many households lack broadband access.

## ARGUMENT

**I.    Prohibiting direct federal funding to PBS—and prohibiting local stations from accessing PBS programming and services with federal funds—would harm local stations and communities.**

Under E.O. 14,290, APTS member stations risk losing access to PBS in two ways. First, E.O. 14,290 purports to end direct federal funding to PBS; any significant reduction to PBS's budget would affect APTS member stations' ability to provide important programming and services to their communities. As PBS made clear in its Motion for Summary Judgment, PBS relies on direct federal funding from CPB and federal agencies, as well as indirect funding from local stations. Plaintiff's Motion for Summary Judgment at 26, *Pub. Broad. Serv. v. Trump*, No. 1:25-cv-01722-RDM (D.D.C. June 13, 2025). If CPB and federal agencies like the Department of Education are no longer permitted to fund PBS directly, PBS will be unable to develop as much programming or provide the same level of services, and local stations and communities that rely on PBS programming and services will suffer as a result.

Second, E.O. 14,290 would prohibit stations from using federal funds to pay for access to PBS programs and services. Many stations rely heavily on PBS for high-quality, educational programming and services. For example, WQPT PBS relies on PBS for 25% of its programming schedule; WHRO for approximately 33%; and Montana PBS for 56%. In Northern California, PBS programs are incredibly popular among public television viewers—regularly holding seven or eight of the top ten most watched programs on KRCB TV. If stations were prohibited from using federal funds to pay PBS dues, their communities may no longer be able depend on their local stations for the programs they trust and rely on, like *Sesame Street, Daniel Tiger's Neighborhood,* Ken Burns documentaries, and *Antiques Roadshow.* Communities would suffer without access to PBS programming and local stations would have to cobble together a full broadcast schedule without many of the programs that viewers know, depend on, and support. For some stations, PBS programming drives fundraising efforts, with viewers more likely to pay to support their local station because it provides access to nationally recognized and locally beloved programming.

The prohibition on direct and indirect federal funding contained in E.O. 14,290 limits APTS member stations' ability to provide their community with PBS content and services, which includes free access to educational programming and materials, critical interconnection and distribution services, and emergency warning services that would be difficult, expensive, and often nearly impossible for member stations to replicate on their own.

APTS member stations depend on PBS to provide their communities with access to free educational programming and materials. In Missouri, 56% of 3- and 4-year-olds do not attend preschool and only three in ten Missouri students read proficiently by fourth grade. Local station Nine PBS relies on PBS for much of its children's programming and educational resources. In

6

2024, Nine PBS supported more than 27,200 children, 4,100 parents/caregivers, and nearly 1,000 educators with these resources. If Nine PBS can no longer spend federal funds on PBS content and services, it may have to cancel these invaluable services. In Kentucky, public, private, and homeschool students and teachers presently rely on PBS LearningMedia, a robust online repository, with thousands of high-quality, free educational resources. KUAC TV in Fairbanks, Alaska, provides seven hours per day of PBS kids programming that it would not be able to offer without federal funding.

Stations also rely on PBS for services that extend beyond programmatic content, including distribution infrastructure, content delivery systems, fundraising support, and integration with the PBS WARN system for backup delivery of the Wireless Emergency Alert system. Every public television station depends on the PBS interconnection and distribution infrastructure to receive PBS and other programming, and, in many cases, to share their local programming with other stations. For example, Montana PBS and WCTE PBS in Tennessee, along with many other stations, depend on CPB and PBS's investments in the public media interconnection system, which is vital to distributing their own content across networks and platforms. By leveraging PBS's distribution infrastructure and technology, Montana PBS is able to reach extremely rural populations and ensure that broadcast stations—even those located on mountaintops—remain up to date. If stations are no longer able to access PBS's interconnection and distribution infrastructure, it will be near impossible for them to cover these essential costs themselves.

Many stations have expressed concern about losing access to PBS's public safety services, which enhance the ability of public broadcasting stations to provide safety alerts and warnings and serve as the backup for Presidential communications in national emergencies. PBS WARN works through local stations to allow local, state, and national agencies to instantly send Wireless

7

Emergency Alerts directly to mobile devices even when internet service is disrupted, such as during natural disasters. Through PBS WARN, local public television stations serve as a resilient backup pathway for the delivery of Wireless Emergency Alert messages to cell carriers. Without access to PBS emergency services, local stations would be more limited in their ability to prepare their communities, especially those that are remote and rural, for serious weather events and national emergencies. Terminating funding to PBS will put these life saving services at risk.

For WHRO in Virginia, the effect of funding cuts would be especially severe in communities like Accomack and Northampton Counties, where WHRO's signal is often the only free, reliable source of trusted media and emergency alerts. KEDT-TV plays a critical role in delivering emergency messages to its community in Corpus Christi, Texas, where hurricanes and tropical storms require local government officials to provide frequent emergency messaging for several days prior, during, and after storms. Maine Public and Vermont Public act as the backbone for their areas' Emergency Alert System; by airing free public safety messaging via television they are able to provide their communities with accessible safety alerts, even during internet outages and cyber-attacks, and when infrastructure is damaged from natural disasters. KET's statewide 15-tower broadcast network, part of the state's reliable infrastructure for emergency alerts to mobile phone providers, served as a critical resource during Kentucky's recent tornado outbreak and flooding disasters.

Following a natural disaster or other emergency event, local public television stations produce important programs to help their community heal and bring attention to ongoing recovery efforts. After the May 16, 2025, tornado ripped through Missouri causing more than $2 billion worth of damage, primarily in low-income communities where 70% of the homeowners were uninsured, Nine PBS presented programming to help all residents understand the long-term effects

of the storms and how to better respond in the future. Nine PBS's programming was featured on the *PBS NewsHour*, which shined a light on the powerful impact of the grassroots community recovery efforts catalyzed, in part, by the local public television station.

If stations are forced to stop airing educational and nationally recognized PBS programs, they would be left with a significant void in their programming schedule. If stations are forced to stop relying on PBS infrastructure, harder-to-reach communities may well lose access to an irreplaceable source of information, education, and community connection. If stations are forced to stop participating in programs such as PBS WARN, communities—especially those in rural and remote areas—will lack the resiliency offered by this important backup service and may be forced to face natural disasters unwarned and unprepared.

II.    **Many stations are at risk of shutting down completely, struggling to acquire alternative programming, or limiting the production of local programming if forced to use non-federal funds to access PBS programs and services.**

Particularly for smaller and less funded stations, a prohibition on the use of federal funds to access PBS programming would be highly detrimental. Many stations do not have sufficient funds to continue to access PBS programming without using federal funds. For other stations, reallocating non-federal funds to cover the costs of PBS programming may be impossible due to local and state funding restrictions and restrictions placed on individual contributions. Additionally, many stations rely on PBS programming to encourage donations from local viewers; stations unable to fund PBS content without federal funds expect to see declines in sustaining memberships and individual donations, further harming stations and the local programming and services they provide.

Member stations are also concerned that if the court allows E.O. 14,290 to take effect, the Executive Branch could ostensibly direct federal agencies to cease funding to any local stations with programs of which it disapproves. As Plaintiffs argue in their Motion for Summary Judgment,

9

such a retaliatory direction would violate member stations' First Amendment rights. Plaintiff's Motion for Summary Judgment at 35-42, *Pub. Broad. Serv. v. Trump*, No. 1:25-cv-01722-RDM (D.D.C. June 13, 2025). It would also harm the communities who rely on and trust their public television station for locally significant programming.

Restrictions on how stations can use federal funds or dramatic reductions in federal funds would be detrimental to stations. For example, WQPT PBS relies on federal funds for 53% of its budget; KUAC TV for 46%; and KEDT TV for 42%. Some similarly situated stations rely on federal funding for 30% or more of their budgets. In some states, state funding is only provided if it is matched by federal funding—these stations are placed in an even greater state of financial precarity by the threatened cancellation of federal funds. For instance, WCTE PBS in Cookeville, Tennessee relies on federal funding for roughly 40% of its budget and could lose an additional 18% in matching funds it receives from the state. WCTE PBS is concerned it will "go dark" if it loses federal and state funding. Montana PBS worries about its ability to maintain and upgrade its broadcast stations that serve "the most rural communities you can imagine" across Montana, including towns where it is the only broadcast station "for approximately 75 miles in any direction."

APTS member stations are concerned that E.O. 14,209's prohibition on using federal funds to pay for PBS services, and the resulting impact on member stations' fundraising efforts, would inhibit stations' abilities to produce critical, community-centered local programming. Local programming is labor intensive, expensive to produce, and often unprofitable; if local public television stations stop airing this programming, commercial stations in the market are unlikely to take over. A small sample of the irreplaceable local programming—many of which have been broadcasted to communities for decades—is provided below:

- Maine Public proudly airs the state High School Basketball Championship Games every March. It is expensive for the station, but it is a beloved tradition for Maine Public's statewide audience, especially in rural areas. The station also produces the *High School Quiz Show* and *Borealis*, an outdoor program that travels all over the state.

- Nine PBS in Missouri produces *Teaching in Room 9*, which provides exposure to literacy, math, science, and social-emotional concepts, and is designed to ensure 3- to 5-year-old kids are prepared for school—24% of its viewers come from homes with no college degree. In 2024 alone, *Teaching in Room 9* aired 261 times, generating 113,000 views. More than 70% of community members who watched *Teaching in Room 9* STEM lessons agreed that the show helped their children to learn STEM concepts at home.

- In addition to a popular weekly news show, WQPT PBS has produced a documentary about an 1800s Iowa community fleeing religious persecution and several programs that share the history of the U.S. military and personal stories of veterans. This summer, WQPT PBS will air a new anthology to mark the June 14, 1775, founding of the Continental Army.

- WHRO local programming includes *Ms. Martha Reads*, which promotes early literacy through story time for young children; in-depth coverage of military and veteran's issues; and free online high school courses used statewide.

- WCTE PBS offers coverage of the local fair, basketball games, and holiday seasonal programs to its community in Cookeville, Tennessee.

- In Indiana, PBS Fort Wayne hosts *Life Ahead*, an interactive discussion forum for adults and those caring for older family members covering topics such as elder law and financial planning.

- Vermont Public produces the weekly television program *Vermont This Week*, which summarizes local news stories and hosts a reporters' roundtable where participants discuss proposed state legislation and more.

While viewership data and the number of local programs created provide a sense of the role that these programs play in their communities, the true impact is impossible to quantify. No other platforms create such high-quality, educational, enriching, long-standing, and community-centered television programming—free of charge—as the APTS member stations.

## CONCLUSION

Public television stations play a vital role in serving communities across the United States, providing essential services in education, public safety, and community connections. E.O. 14,290 poses significant risks to the operations and missions of APTS member stations, particularly those in rural and underserved areas. APTS therefore urges the Court to grant PBS' Motion for Summary Judgment.

Dated: June 20, 2025                              Respectfully submitted,

/s/ *Natalie Fleming Nolen*
Natalie Fleming Nolen (D.C. Bar No. 1024018)
MORRISON & FOERSTER LLP
2100 L St NW
Washington, DC 20037
(202) 887-1500
nflemingnolen@mofo.com

*Counsel for America's Public Television Stations*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with the type-volume limitations of Local Civil Rules 7(o)(4) and the typeface requirements of Local Civil Rule 5.1(d) because it does not exceed twenty-five pages and has been prepared in Microsoft Word using 12-point Times New Roman font.

Dated:  June 20, 2025              Respectfully submitted,

/s/ *Natalie Fleming Nolen*
Natalie Fleming Nolen (D.C. Bar No. 1024018)
MORRISON & FOERSTER LLP
2100 L St NW
Washington, DC 20037
(202) 887-1500
nflemingnolen@mofo.com


*Counsel for America's Public Television Stations*

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, I electronically filed the original of this brief with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Dated: June 20, 2025

Respectfully submitted,

/s/ *Natalie Fleming Nolen*
Natalie Fleming Nolen (D.C. Bar No. 1024018)
MORRISON & FOERSTER LLP
2100 L St NW
Washington, DC 20037
(202) 887-1500
nflemingnolen@mofo.com

*Counsel for America's Public Television Stations*

14