IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC BROADCASTING SERVICE, *et al.*,

   *Plaintiffs,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States *et al.*,

   *Defendants.*

Case No. 1:25-cv-01722-RDM

# FEDERAL DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.     PLAINTIFFS' CLAIMS ARE UNRIPE. ................................................................ 2

    II.    PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL. ........................................ 7

    III.   PLAINTIFFS' STATUTORY CLAIMS FAIL. ..................................................... 11

          A.    *Ultra Vires* Review Is Unavailable. ............................................................ 12

          B.    Plaintiffs' *Ultra Vires* Claims Fail on the Merits. ...................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013) .................................................................................................. 2, 7, 10

*Am. Foreign Serv. Ass'n v. Garfinkel*,
   490 U.S. 153 (1989) .............................................................................................................. 3

*Amica Ctr. for Immigrant Rts. v. DOJ*,
   No. 25-cv-00298-RDM, 2025 WL 1852762 (D.D.C. July 6, 2025) .......................... 6

*Ashwander v. Tenn. Valley Auth.*,
   297 U.S. 288 (1936) .............................................................................................................. 3

*Bd. of Governors, Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) .............................................................................................................. 12

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
   295 F.3d 28 (D.C. Cir. 2002) ............................................................................................ 13

*Chlorine Inst., Inc. v. Fed. R.R. Admin.*,
   718 F.3d 922 (D.C. Cir. 2013) ........................................................................................... 7

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................................................. 4

*Corp. for Pub. Broad. v. FEMA*,
   ---- F. Supp. 3d ----, 2025 WL 1938198 (D.D.C. July 15, 2025) ................................ 4

*Corp. for Pub. Broad. v. Trump*,
   No. 25-cv-1305 (RDM), 2025 WL 1617191 (D.D.C. June 8, 2025) ....................... 14

*Decker v. Nw. Envtl. Def. Ctr.*,
   568 U.S. 597 (2013) .............................................................................................................. 4

*FCC v. League of Women Voters of Cal.*,
   468 U.S. 364 (1984) ............................................................................................................ 10

*Hannegan v. Esquire, Inc.*,
   327 U.S. 146 (1946) .............................................................................................................. 9

*Laird v. Tatum*,
   408 U.S. 1 (1972) .................................................................................................................. 6

*Lamb's Chapel v. Center Moriches Union Free School Dist.*,
    508 U.S. 384 (1993)............................................................................................................ 9

*Leedom v. Kyne*,
    358 U.S. 184 (1958).......................................................................................................... 12

*Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001)....................................................................................................*passim*

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990)............................................................................................................ 4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................................ 6

*Megapulse Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) .......................................................................................... 6

*\*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998)........................................................................................................ 2, 9

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003)............................................................................................................ 3

*Nuclear Regul. Comm'n v. Texas*,
    605 U.S. 665 (2025).......................................................................................................... 12

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ........................................................................................ 12

*Refugee and Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,
    No. 25-cv-306 (RDM), 2025 WL 1825431 (D.D.C. July 2, 2025)............................ 13

*\*Regan v. Tax'n With Representation of Wash.*,
    461 U.S. 540 (1983).......................................................................................................... 10

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
    515 U.S. 819 (1995)............................................................................................................ 9

*\*Rust v. Sullivan*,
    500 U.S. 173 (1991)....................................................................................................*passim*

*Southeastern Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975)............................................................................................................ 9

*Susman Godfrey LLP v. Executive Office of President*,
   No. 25cv-1107 (LLA), 2025 WL 1779830 (June 27, 2025) ................................................. 13, 14

*Texas v. United States*,
   523 U.S. 296 (1998) .................................................................................................................. 3

*\*Trump v. Am. Fed'n of Gov't Emps.*,
   606 U.S. ----, 2025 WL 1873449 (U.S. July 8, 2025) .......................................................... 5, 13

*Trump v. New York*,
   592 U.S. 125 (2020) .............................................................................................................. 2, 3

**STATUTES**

20 U.S.C. § 954 .............................................................................................................................. 9

47 U.S.C. § 396 .............................................................................................................................. 8

47 U.S.C. § 398 ............................................................................................................................ 14

Rescissions Act of 2025, Pub. L. No. 119-28, 139 Stat. 467 ......................................................... 3

**REGULATIONS**

Exec. Order No. 14,290, *Ending Taxpayer Subsidization of Biased Media*,
   90 Fed. Reg. 19415 (May 1, 2025) ....................................................................................... 1, 5

**OTHER AUTHORITIES**

CPB, *Corporation for Public Broadcasting Addresses Operations Following Loss of Federal Funding* (Aug. 1, 2025),
   https://cpb.org/pressroom/Corporation-Public-Broadcasting-Addresses-Operations-Following-Loss-Federal-Funding ................................................................................................. 1, 3

**INTRODUCTION**

Plaintiffs brought this case largely to challenge an Executive Order ("the EO")[1] that directs the Corporation for Public Broadcasting ("CPB") to cease indirect and direct funding to the Public Broadcasting Service ("PBS") and National Public Radio ("NPR"). Since the Complaint was filed—indeed, since Plaintiffs' most recent brief was filed—this case has fundamentally changed, because CPB itself will imminently cease to exist. Plaintiffs' challenges were already unripe, but this latest development eliminates any doubt about that.

On July 24, the President signed a bill rescinding funds originally made available to CPB for FY 2026 and FY 2027. A few days later, the Senate Appropriations Committee proposed providing no funds to CPB for FY 2026. And on August 1, CPB announced that it is winding down its operations starting this year; it "informed its employees . . . that the majority of staff positions will conclude with the close of the fiscal year on September 30, 2025."[2] Plaintiffs' theory that CPB will ultimately decide to terminate funding to PBS based on the EO was speculative when this suit began; CPB's imminent dissolution shows that this suit will never ripen into a live challenge vis-à-vis that portion of the EO.

Even if this Court did have jurisdiction over the claims against the portions of the EO related to CPB, those claims fail on the merits. With respect to their First Amendment challenge, Plaintiffs rely almost exclusively on the claim that CPB funding amounts to a limited public forum; they say CPB is just about "encouraging a diversity of views from private speakers," ECF No. 1, at 36 (Compl. ¶ 95) (citation omitted), and is thus protected under *Legal Servs. Corp. v. Velazquez*,

---

[1] Exec. Order No. 14,290, *Ending Taxpayer Subsidization of Biased Media*, 90 Fed. Reg. 19415 (May 1, 2025).

[2] CPB, *Corporation for Public Broadcasting Addresses Operations Following Loss of Federal Funding* (Aug. 1, 2025), https://cpb.org/pressroom/Corporation-Public-Broadcasting-Addresses-Operations-Following-Loss-Federal-Funding ("CPB Press Release").

531 U.S. 533 (2001). But that analogy fails, because CPB never provided funding to all comers on an equal basis. Rather, Congress recognized that CPB must make judgments about the type of contents and perspectives to be funded with taxpayer dollars. *Rust v. Sullivan*, 500 U.S. 173 (1991), *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), and *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("*AID*"), 570 U.S. 205 (2013), all affirmed the government's right to determine which speech to subsidize using taxpayer funds.

Plaintiffs' claims against the agency defendants fare even worse. Plaintiffs admit they do not bring Administrative Procedure Act ("APA") challenges to discrete, final agency actions—since none has occurred. The premise of their response's First Amendment argument is that Congress intended to use CPB to subsidize purely private speech—a claim that, even if true, would not apply to the agency defendants. Plaintiffs make no attempt to show that funding by agency defendants to PBS would constitute support of private speech. And they make no attempt to discuss the specific statutory authorities applicable to specific agency actions in the future. Plaintiffs cannot bring an *ultra vires* claim under such circumstances, when they have chosen to withdraw their APA claim and identify no statutory violation.

For these reasons, this Court should grant Defendants' cross-motion for summary judgment, deny Plaintiffs' motion for summary judgment in its entirety, and dismiss this suit.

## ARGUMENT

### I.      PLAINTIFFS' CLAIMS ARE UNRIPE.

A claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted). Plaintiffs' claims are not ripe, both with respect to Section 2 of the EO (as to CPB), and Section 3 of the EO (as to other federal agencies).

2

*First*, Plaintiffs' claims as to CPB are not ripe—indeed, because of multiple independent intervening events, those claims are less ripe now than when this lawsuit began. As Defendants previously explained, and as Plaintiffs do not dispute—to date, CPB has stated it will not comply with the EO and disputes that it is subject to the President's direction. Nor has the government, via the Department of the Treasury, tried to indirectly enforce the directive by taking any action to reduce funding to CPB. ECF No. 23-1, at 13, 15. The proposition that—notwithstanding its refusal to cut funding—CPB would nonetheless imminently cut funding to Plaintiffs was thus speculative at the outset of this litigation and is insufficient for this Court to exercise jurisdiction. *See Texas v. United States*, 523 U.S. 296, 300–01 (1998); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Trump*, 592 U.S. at 131. Plaintiffs say that CPB's stated refusal to cut funding to PBS is a "*merits* argument," and irrelevant for Article III purposes. ECF No. 30, at 13. It is not. The uncontroverted evidence to date is that CPB does not intend to comply with this EO. And while future developments may alter that landscape, this Court need not—indeed, should not—rush into a ruling here before such possibilities become realities, assuming they ever do. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (1936) (Brandeis, J., concurring); *see also Am. Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 161 (1989) (reaffirming that courts should avoid unnecessary constitutional rulings).

Since this lawsuit began, the proposition that CPB would act against PBS is even less likely, and the need for judicial resolution is thus even more remote and speculative. In late July, Congress rescinded FY 2026 and FY 2027 funding for CPB, *see* Rescissions Act of 2025, Pub. L. No. 119-28, 139 Stat. 467. In response, CPB announced it is winding-down its operations as of September 30, 2025, *see* CPB Press Release. Under Plaintiffs' theory, then, for their claims to be ripe, CPB would have to—during its last weeks of being fully operational, as it is winding down

3

its affairs, and after refusing for months to comply with the EO—suddenly decide to cut funding for PBS. That imagined abrupt about-face is implausible and cannot serve as a potential injury, much less a "certainly impending" one. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). The claims related to CPB are likely to become moot in October, once CPB winds-itself down. There is no authority for this Court to rush a decision when this case's lack of ripeness may well soon become mootness. *See, e.g.*, *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) (courts must ensure a justiciable controversy exists at all stages of review—not just at filing); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990) (dispute must remain live throughout the litigation; courts need not decide cases that are about to become moot).

*Second*, Plaintiffs' claims against the agency defendants for prospective relief are also unripe because they depend on the specifics of as yet unknown and merely potential future actions of individual agencies. Plaintiffs purport to identify two past instances where they allege that grant funding to CPB has been delayed or denied, but neither supports the broad future relief they seek. The first is the Next Generation Warning System ("NGWS") grant program that FEMA awarded to CPB. Earlier this year, FEMA temporarily shut down the online portal by which CPB submitted requests for reimbursements. That portal was later restored, and CPB's attempt to seek emergency relief to keep the portal open prospectively was denied. *See Corp. for Pub. Broad. v. FEMA*, --- F. Supp. 3d ---, 2025 WL 1938198 (D.D.C. July 15, 2025). During that litigation, a FEMA declarant indicated that access to funding via the portal was temporarily shut off to allow a review of grants to ensure compliance with the EO. *See id.* at *4 n.3. Plaintiffs' other example is a grant to CPB and PBS that the Department of Education terminated. Plaintiffs are not challenging either specific instance of grant freeze or termination in this lawsuit. Rather, they use these examples as evidence that the EO is being implemented—but as their own examples illustrate, the context for how the

4

EO is implemented will vary significantly by agency, program, and legal claim to funds; in some cases, an agency will terminate funding, in others it may not.

Instead of challenging a discrete act implementing the EO, Plaintiffs brought this facial challenge, disclaiming any specific challenge to discrete agency action, seeking to preclude *any* future grant terminations. ECF No. 30, at 10 n.1. Plaintiffs want this Court to issue a guarantee against *any* future terminations, regardless of the nature of the agency, the nature of the grant program, or the individual context of any such agency action. Such speculative, inchoate actions are unripe—particularly given that the EO cautions that any grant terminations should only be to the extent permitted by law. *See* Exec. Order No. 14,290 §§ 2, 3, 5. The Supreme Court recently cautioned against allowing such facial challenges to qualified Executive Orders (i.e., those that merely direct future agency actions consistent with the law) outside the context of those individual agency actions. *See, e.g.*, *Trump v. Am. Fed'n of Gov't Emps.* ("*AFGE*"), 606 U.S.---, 2025 WL 1873449 (U.S. July 8, 2025); *see also id.* at *1 (Sotomayor, J., concurring). In response, Plaintiffs say that there is no possible way the EO can be interpreted constitutionally, so any subsequent grant terminations will necessarily be unlawful. ECF No. 30, at 20-24. That is an assertion they do not establish: their briefing papers focus almost exclusively on Section 2 of the EO (CPB), not Section 3 (federal agencies). Plaintiffs do not analyze the statutory authorities of the agency defendants, and their First Amendment argument raised in response contends that CPB funding is intended to encourage a "diversity of views," and thus falls outside *Rust*. Even if that is true (and it is not), that argument is CPB-specific, and does not even attempt to confront other contexts in

which agency defendants are funding PBS. Accordingly, Plaintiffs' claims against the agency defendants must wait until there is a concrete action to constitutionally challenge.³

Third, Plaintiffs assert that the EO is currently harming them, thus that their dispute is ripe. They identify two purported harms—an alleged subjective "chill" on their broadcasting activities and purported economic injuries. Neither suffice to show this is a ripe dispute. With respect to a subjective "chill" of broadcasting activities, such assertions are conclusory and cannot justify a ripe dispute at the summary judgment phase. For example, Lakeland PBS's President and CEO stated that "[i]t appears that Lakeland PBS will face government reprisals if it does not air content that the President approves." ECF No. 30-3, at 2 (Suppl. Hanks Decl. ¶ 5). But the EO imposes no restrictions on which content can be aired at all, by anyone—Plaintiffs' subjective fear cannot justify relief here. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm").

Nor can allegations of economic harm be tied to the EO. Plaintiffs put forward conclusory and speculative declarations asserting potential harm, if they do not receive CPB funding moving forward. *See, e.g.*, ECF No. 30-2, at 2 (Suppl. Kerger Decl. ¶ 4); ECF No. 30-3, at 1-2 (Suppl. Hanks Decl. ¶¶ 3-4). But they cannot tie such harm to the EO, as opposed to Congress' recission bill, which cut funding moving forward, or the CPB itself imminently winding itself down. A lack of causation defeats any potential injury. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (noting difficulty of establishing Article III jurisdiction based on injury caused "unfettered

---

³ Whether Plaintiffs could proceed on such a claim here, or in in the Court of Federal Claims, depends on the specifics and contours of that claim and is not an issue the Court need resolve at this time. *See, e.g.*, *Amica Ctr. for Immigrant Rts. v. DOJ*, No. 25-cv-00298-RDM, 2025 WL 1852762, at *12-19 (D.D.C. July 6, 2025), *appeal filed,* No. 25-5254 (D.C. Cir. July 16, 2025); *see also Megapulse Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).

choices made by independent actors not before the courts" (citation omitted)).  And their allegations about injury potentially caused by future actions of defendant agencies are conclusory, *see* ECF No. 30-2, at 3 (Suppl. Kerger Decl. ⁋ 9), and the Kerger declaration simply notes that PBS member stations have applied to defendant agencies for funding in the past.  That is not enough to establish future injury.  *See, e.g.*, *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013) (ripeness requires an injury to be certainly impending).

## II.     PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL.

As Defendants explained in their opening brief, when the government is acting as patron, not regulator (as here) and where it is not restricting the conduct of speech outside the conduct of the federal funds at play (as here), First Amendment concerns are substantially diminished.  *See* ECF No. 23-1, at 16 (citing *Rust*, 500 U.S. 173; *AID,* 570 U.S. 205).  There is therefore no sound basis to claim that the EO or its implementation violates the First Amendment.

In response, Plaintiffs rely almost exclusively on the Supreme Court's decision in *Velazquez*, 531 U.S. 533.  But *Velazquez* is inapplicable here.

In *Velazquez*, the Supreme Court considered a funding condition applicable to the Legal Services Corporation ("LSC"), which provided financial support for non-criminal legal assistance. *Id.* at 536.  The funding condition prohibited recipients of LSC money from attempting to amend or challenge existing welfare law.  *Id.*  The Court concluded that such a condition was unconstitutional, because this government funding was "designed to facilitate private speech, not to promote a governmental message." *Id.* at 542. The Court noted that "Congress funded LSC grantees to provide attorneys to represent the interests of indigent clients," and that the "LSC lawyer . . . speaks on the behalf of his or her private, indigent client." *Id.*  The Court was further concerned that this restriction would severely impair the judicial function, because the restriction was "inconsistent with the proposition that attorneys should present all the reasonable and well-

7

grounded arguments necessary for proper resolution of the case." *Id.* at 545; *see also id.* at 548 ("We must be vigilant when Congress imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge.").

This case does not involve private speech akin to that of a lawyer challenging a government agency on behalf of their client—it involves direct government subsidization of noncommercial broadcasting. Plaintiffs reiterate that the purpose of CPB is to "encourage a diversity of views from private speakers." ECF No. 30, at 8, 21 (citing *Velazquez*, 531 U.S. at 541-42). They cite 47 U.S.C. § 396(a)(3), which states—in full—that "expansion and development of public telecommunications and of diversity of its programming depend on freedom, imagination, and initiative on both local and national levels[.]" *Id.* Yet, in highlighting this provision, Plaintiffs ignore the very next Congressional finding: that "the encouragement and support of public telecommunications, while matters of importance for private and local development, *are also of appropriate and important concern to the Federal Government*[.]" *Id.* § 396(a)(4) (emphasis added). Plaintiffs further overlook the finding that "it furthers the general welfare to encourage public telecommunications services which will be responsive to the interests of people both in particular localities and through the United States." *Id.* § 396(a)(5). And they disregard the finding that "it is necessary and appropriate for the Federal Government *to complement, assist, and support* a national policy that will most effectively make public telecommunications services available to all citizens of the United States." *Id.* § 396(a)(7) (emphasis added). CPB must balance various criteria—determining that it is supporting "programs of high quality, diversity, creativity, excellence and innovation, which are obtained from diverse sources" while also ensuring "strict adherence to objectivity and balance." *Id.* § 396(g)(1)(A). Plaintiffs' repeated incantation of only one of these criteria does not save their claims.

8

Section 396 is thus *not* a statutory scheme where government funding is simply encouraging private speakers, with no distinct federal interest in what they say. This case is instead akin to *Finley*, where the Supreme Court upheld under the First Amendment criteria for allocating funding for works of "artistic excellence and artistic merit . . . taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public[.]" 20 U.S.C. § 954(d)(1). As the Supreme Court noted,

> In the context of arts funding, in contrast to many other subsidies, the Government does not indiscriminately 'encourage a diversity of views from private speakers.' . . . The NEA's mandate is to make esthetic judgments, and the inherently content-based 'excellence' threshold for NEA support sets it apart from the subsidy at issue in *Rosenberger* [*v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 834 (1995)]—which was available to all student organizations that were 'related to the educational purpose of the University,' *id.*, at 824 — and from comparably objective decisions on allocating public benefits, such as access to a school auditorium or a municipal theater, *see Lamb's Chapel v. Center Moriches Union Free School Dist.,* 508 U.S. 384, 386 (1993*); Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975), or the second class mailing privileges available to 'all newspapers and other periodical publications,' *see Hannegan v. Esquire, Inc.*, 327 U.S. 146, 148, n.1 (1946).

*Finley*, 524 U.S. at 586. Plaintiffs do not claim that CPB funds are available to anyone who comes asking. They do not dispute that CPB must make judgments about quality and worth. They do not dispute that the government has involved itself in this process and recognizes a role for itself in such subsidization. Those facts readily distinguish this case from *Velazquez* and *Rosenberger* and make them more akin to *Finley* and *AID*.

Other factors also distinguish *Velazquez*. Another concern the Supreme Court expressed there was that the funding curtailment left indigent clients with no ability to seek concurrent alternate representation to address their constitutional challenges. *Velazquez*, 531 U.S. at 547 ("Because LSC attorneys must withdraw whenever a question of a welfare statute's validity arises, an individual could not obtain joint representation so that the constitutional challenge would be

9

presented by a non-LSC attorney, and other, permitted, arguments advanced by LSC counsel."). Unlike the effect on the indigent clients in *Velazquez*, neither Plaintiff here is unable to fulfill their viewpoint preferences. Consistent with *Rust* and *AID*,[4] Plaintiffs simply must use their non-federal funding money to air their choice of content, and in station member Lakeland's case, use non-federal subsidies to procure licensing from PBS. And implementation of the EO here, unlike in *Velazquez*, does not foreclose Plaintiffs (as grantee recipients) from raising constitutional challenges to the EO nor does the EO encroach on the Judicial Branch's power.

Ultimately, this case involves only restrictions on the use of federal funds themselves, unlike *FCC v. League of Women Voters of Cal.*, 468 U.S. 364 (1984), which involved a prohibition on any noncommercial educational broadcasting station which receives a grant from CPB from "engag[ing] in editorializing." The *League of Women* Court struck the condition because it prohibited *all* editorializing, including with private funds. (*Velazquez* similarly applied a prohibition to all activities by recipients of federal funding, even if they used private funds for those activities. 531 U.S. at 538 ("The prohibitions apply to all of the activities of an LSC grantee, including those paid for by non-LSC funds. §§ 504(d)(1) and (2).")). Here, by contrast, the challenged EO does not purport to impose any restrictions on the use of private funds.[5]

---

[4] Plaintiffs argue that the "practical effect of the indirect funding restriction is to dictate the programming member stations can air more broadly." ECF No. 30, at 24. This they equate with "leverag[ing] funding to regulate speech outside the contours of the federal program itself." *Id.* (quoting *AID*, 570 U.S. at 206). But the failure to subsidize speech does not constitute a restriction or regulation of such private speech. *See Rust*, 500 U.S. at 201; *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540, 546 (1983).

[5] Plaintiffs give limited discussion to Defendants' arguments that the EO's implementation neither retaliates nor violates their editorial discretion. As Defendants previously argued, Plaintiffs do not allege unlawful actions based on retaliation and editorial discretion doctrines of the First Amendment. Rather, they dress up purported retaliation and editorial discretion violations as interwoven rationales to support their argument that the existence and implementation of the EO

Finally, it is worth noting that Plaintiffs press *only* First Amendment arguments related to their claim that CPB is designed to encourage a "diversity of views" and thus *Rust* is inapplicable. This argument applies only to their challenge to Section 2 of the EO, based on their (mistaken) impression of the CPB's purported limited public forum status. They do not address any statutory authorities for other agencies subject to Section 3 of the EO. They offer no arguments about the purpose of any such funding programs where future grants to PBS may be terminated, much less the First Amendment applicability to such provisions. (That is why, after all, such claims are not ripe—they remain inchoate.) Thus, even were this Court to find that Section 2 violates the First Amendment, it should not apply the same reasoning to Section 3 on a facial basis.

### III.     PLAINTIFFS' STATUTORY CLAIMS FAIL.

Plaintiffs' statutory claims fail, both as they relate to Section 2 of the EO (related to CPB) and to Section 3 of the EO (related to other federal agencies). First, *ultra vires* review is unavailable in all respects, because Plaintiffs—who have abandoned their APA claim—cannot satisfy the stringent standards the Supreme Court recently expounded for such review. Second, Plaintiffs' claims fail on the merits. Plaintiffs only raise statutory claims addressed at Section 2 of the EO, discussing CPB's statutory authorities. That claim is meritless. Plaintiffs bring no statutory claims against agency defendants subject to Section 3 of the EO, indeed, they do not even identify any statute those agency defendants would be violating by complying with the EO. Their *ultra vires* claim against the agency defendants thus necessarily fails.

---

unconstitutionally discriminates against Plaintiffs' viewpoint. Those arguments fail for the reasons stated above.

### A. *Ultra Vires* Review Is Unavailable.

Plaintiffs cannot successfully seek *ultra vires* review with respect to statutory claims against any defendant. At the outset, notwithstanding Count VII of the Complaint, Plaintiffs now insist that they do not seek relief under the APA, and that they instead ask this Court only to find that the EO is *ultra vires*. ECF No. 30, at 8, 10. n.1,19. Plaintiffs unequivocally state that they are not asking the Court to review "specific agency action" as to their *ultra vires* claims. *Id.* at 19.

With respect to their statutory claims, Plaintiffs cannot avoid the requirements of final agency action imposed by the APA simply by seeking to bring an *ultra vires* claim. In *Nuclear Regul. Comm'n v. Texas* ("*NRC*"), the Supreme Court confirmed the framework for considering nonstatutory, *ultra vires* review. 605 U.S. 665, 680-81 (2025). As the Court explained, "[b]ecause *ultra vires* review could become an easy end-run around the limitations of . . . judicial-review statutes, this Court's subsequent cases have strictly limited nonstatutory *ultra vires* review to the 'painstakingly delineated procedural boundaries of' *Leedom v. Kyne*, 358 U.S. 184 (1958), the "leading case on post-APA *ultra vires* review."' 605 U.S. at 681. *Ultra vires* review applies, if at all, only "when an agency has taken action entirely in excess of its delegated powers," *id.* (cleaned up), and "contrary to a *specific prohibition* in a statute," *id.* (citation omitted). And even then, nonstatutory review is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review[.]'" *Id.* (quoting *Bd. of Governors, Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). Ultimately, a nonstatutory *ultra vires* claim "'is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds.'" *Id.* (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)).

Plaintiffs' attempt to bring *ultra vires* claims against the Defendants here cannot satisfy these requirements. First, there is no unequivocal statutory prohibition; rather, the EO instructs federal agencies to end direct and indirect funding to PBS and local stations only to the maximum extent that applicable law permits. *See, e.g.*, *AFGE*, 2025 WL 1873449, at *1 (Sotomayor, J., concurring); *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002). Nor has there been a clear statutory violation, as discussed below. Second, to the extent that an agency defendant *does* take action terminating funding, such action would be reviewable, either in the Court of Federal Claims or in a federal district court under the APA (as Plaintiffs averred in their complaint, *see* ECF No. 1, at 46-47 (Compl. ¶¶ 136 – 144)). Plaintiffs appear to have abandoned their APA claims. *See* ECF No. 30, at 10 n.1, 19. That, however, does nothing to change the fact that the APA (or the Tucker Act) would be available for such a claim if properly brought.

In response, Plaintiffs argue that *ultra vires* review is available to review executive actions. *See* ECF No. 30, at 18-19 (citing, *e.g.*, *Refugee and Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. 25-cv-306 (RDM), 2025 WL 1825431, at *30 (D.D.C. July 2, 2025). That may be so, at least in some circumstances—and Defendants have not contested that fact. But for *ultra vires* review of executive compliance with statutory requirements, it is the Supreme Court's standard in *NRC* that applies to such claims, and as discussed above, Plaintiffs cannot satisfy that standard for the agency defendants. Finally, with respect to presidential review, Plaintiffs rely on *Susman Godfrey LLP v. Executive Office of President*, No. 25cv-1107 (LLA), 2025 WL 1779830, at *23 (June 27, 2025), for the proposition that the "demanding standard" of *ultra vires* review does not apply to challenges to presidential authority. ECF No. 30, at 20. But *Susman* limited its discussion to a "separation-of-powers" constitutional argument not present here. *See Susman*, 2025 WL

13

1779830, at *23. Nor, ultimately, have Defendants even argued that the *NRC* standard applies to Plaintiffs' constitutional claim; Defendants' arguments involve Plaintiffs' statutory claims. *See* ECF No. 23-1, at 24-27.

### B. Plaintiffs' *Ultra Vires* Claims Fail on the Merits.

As discussed, Plaintiffs' most recent filing confirms that the Public Broadcasting Act ("PBA") is the only statute it wants this Court to hold that the Defendants have violated, as applicable to Section 2 of the EO. With respect to Section 3 of the EO, which applies to federal agencies, Plaintiffs do not challenge any specific statute that they argue the agency defendants will violate by complying with the EO. Indeed, Plaintiffs' First Amendment argument appears to be premised entirely on Section 2 of the EO, which applies only to CPB. Accordingly, any *ultra vires* claim directed at the agency defendants or at Section 3 of the EO fails.

With respect to the PBA, Plaintiffs' claim that Section 2 of the EO is *ultra vires* is meritless. Plaintiffs' primary statutory argument is that the PBA prevents the President, or those acting at his direction, from "exercis[ing] any direction, supervision, or control" over CPB. *See* ECF No. 30, at 16, 17 (quoting 47 U.S.C. § 398(a)). But the PBA cannot justify relief for two reasons. First, CPB has not taken any action—and given its pending wind-down, may never do so. Second, as this Court noted, the President has "at least *some* ability to influence the affairs of the Corporation." *Corp. for Pub. Broad. v. Trump*, No. 25-cv-1305 (RDM), 2025 WL 1617191, at *10 (D.D.C. June 8, 2025) (emphasis in original). Nor has CPB taken any action in response to the EO. Given the imminent end of CPB, this Court need not decide whether Section 2—if implemented—would violate the PBA, or whether Presidential direction would constitute appropriate influencing of CPB.

14

## CONCLUSION

For all the reasons stated, the Court should grant Defendants' cross-motion and deny Plaintiffs' motion for summary judgment in its entirety, and dismiss this action.

Dated: August 8, 2025                          Respectfully Submitted,


BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Carmen M. Banerjee*
CARMEN M. BANERJEE
(D.C. Bar #497678)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 514-3183
Fax: (202) 616-8460
Email: carmen.m.banerjee2@usdoj.gov

*Counsel for the Federal Defendants*